UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------- X

MORGAN STANLEY,

             **Plaintiff,**

  - against -

JOSEPH F. "CHIP" SKOWRON III,

             **Defendant.**

-------------------------------------------------- X

**OPINION AND ORDER**

**12 Civ. 8016**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

Morgan Stanley brings this action for compensatory and punitive damages, disgorgement, reimbursement, contribution, and attorneys' fees and costs against Joseph "Chip" Skowron III, a former Managing Director of Morgan Stanley.[1]  Skowron moves to dismiss Count Three (fraud), Five (contribution), and a portion of Count Two (breach of fiduciary duty) of the Complaint under Federal Rule of Civil Procedure 12(b)(6) on various grounds.  For the following reasons, Skowron's motion is granted in part and denied in part.

---

[1]    This Court has subject matter jurisdiction under 28 U.S.C. § 1332 since complete diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000.  *See* Complaint ("Compl.") ¶ 9.

## II.    BACKGROUND[2]

Skowron – a medical doctor with a degree from Yale – left his orthopedic residency at Harvard in 2001 to pursue a career in finance.[3]  Two years later, Skowron joined FrontPoint, a then-leading hedge fund acquired by Morgan Stanley in 2006.[4]  Between 2007 and 2010, Morgan Stanley paid Skowron $32,555,456, a significant portion of which consisted of performance-based management and incentive fees tied to the healthcare funds co-managed by Skowron.[5]

In April 2006, FrontPoint hired an expert networking firm ("the Firm").[6] FrontPoint employees met with medical experts provided by the Firm, including Yves Benhamou, M.D., a French medical doctor and clinical investigative physician for Human Genome Sciences, Inc. ("HGSI"), a publicly-

---

[2]    The facts stated below are drawn from the Complaint and the documents referenced therein, namely, the Amended Complaint in *SEC v. Skowron*, No. 10 Civ. 8266 (S.D.N.Y. filed April 12, 2011) ("SEC Action"), Ex. A to the Complaint; the Final Judgment as to Joseph F. "Chip" Skowron III filed in the SEC Action, Ex. B to the Complaint ("SEC Judgment"); and the Opinion and Order dated March 20, 2012 in *United States v. Skowron*, 839 F. Supp. 2d 740 (S.D.N.Y. 2012), *aff'd*,  — Fed. App'x — (2d Cir. 2013) ("Restitution Order").

[3]    *See* Compl. ¶¶ 8, 11.

[4]    *See id.* ¶¶ 6, 13-14.

[5]    *See id.* ¶¶ 13-16.

[6]    *See id.* ¶¶ 20-21.

traded biopharmaceutical company.[7]  Benhamou was involved in clinical trials for Albuferon, a drug developed by HGSI for the treatment of hepatitis C.[8]  Beginning in 2006, Skowron began meeting and conversing with Benhamou, and by April 2007 the two began circumventing the Firm and communicating directly with one another.[9]

### A.     The Albuferon Trials and Sale of HGSI Stock

Between February and December 2007, FrontPoint purchased about $65 million in HGSI common stock at an average price of $10.32 based largely on Skowron's belief that the stock was undervalued and would increase in value as a result of the development of Albuferon.[10]  But in November 2007, two patients in the Albuferon clinical trials suffered serious adverse events ("SAEs"), with one patient eventually dying of such complications.[11]  As part of the Steering Committee for the trials, Benhamou became aware of the SAEs and knew that such events would be reported to the trial's safety committee.[12]  Knowing that the safety

---

[7]     *See id.* ¶¶ 18, 21.

[8]     *See id.* ¶ 19.

[9]     *See id.* ¶ 22.

[10]    *See id.* ¶¶ 25-26.

[11]    *See id.* ¶ 30.

[12]    *See id.* ¶¶ 31-32.

3

committee was considering modifying the Albuferon trials, Benhamou contacted Skowron and informed him of both the SAEs and the potential impact of those SAEs on the trials.[13]  Such information was non-public at the time.[14]  Based on the information improperly disclosed by Benhamou, Skowron instructed traders at FrontPoint to sell a large portion of their HGSI stock.[15]  Benhamou continued to provide inside information to Skowron through January 2008, including on January 22, when Benhamou notified Skowron that HGSI planned to issue a press release regarding the negative developments in the Albuferon trial.[16]  FrontPoint made a large sale of HGSI stock that same day.[17]  By the close of business on January 23, 2008 – the day HGSI issued its press release – its stock had dropped from $10.02 per share to $5.62 per share.[18]  Because FrontPoint sold all its HGSI stock prior to the press release, its funds avoided losses of $30 million.[19]

---

[13]     *See id.* ¶¶ 34-36.

[14]     *See id.*

[15]     *See id.* ¶¶ 35-36.

[16]     *See id.* ¶¶ 38-39.

[17]     *See id.* ¶ 39.

[18]     *See id.* ¶¶ 40-41.

[19]     *See id.* ¶ 42.

### B.  The SEC Investigation

The SEC began investigating the January 22 sale of HGSI stock shortly thereafter and interviewed Skowron in February 2008.[20]  About a week before the SEC interview, Skowron contacted Benhamou and told him that Skowron's attorneys wanted to interview Benhamou.[21]  Accordingly, Skowron asked Benhamou to lie by stating that he (Benhamou) had never given Skowron any non-public information about the trials.[22]  Benhamou agreed to participate in the cover-up.[23]  During his interview, Skowron assured the SEC – and his lawyers at Morgan Stanley and FrontPoint[24] – that he had not received or traded on non-public information; that he did not have any interaction with Benhamou other than in the context of Benhamou's role as a consultant for the Firm; and that he never provided Benhamou with improper benefits.[25]

Between February 2008 and December 2010, Skowron continued to

---

[20]  *See id.* ¶¶ 45-46.

[21]  *See id.* ¶ 53.

[22]  *See id.*

[23]  *See id.* ¶ 54.

[24]  Morgan Stanley provided Skowron with a lawyer and advanced attorneys' fees and legal costs to him prior to discovering his criminal activity.  *See id.* ¶ 80.

[25]  *See id.* ¶ 50.

lie to Morgan Stanley, its attorneys, the SEC, federal prosecutors, and the FBI about the circumstances of the HGSI sales and about his relationship with Benhamou.[26]  Meanwhile, on several occasions Skowron offered Benhamou cash payments and other benefits, apparently to encourage Benhamou to continue lying about their illegal conduct.[27]  Morgan Stanley terminated Skowron in December 2010.[28]

### C. The SEC Action

The SEC filed a civil action, *Securities and Exchange Commission v. Benhamou* ("SEC Action"),[29] in which Skowron was eventually named as a defendant.[30]  The SEC alleged that Skowron violated several securities laws, including Rule 10b-5,[31] and named six FrontPoint healthcare funds as Relief Defendants in the action.[32]  The SEC Action did not allege any securities violations

---

[26]      *See id.* ¶¶ 50, 61-63.

[27]      *See id.* ¶¶ 56, 58-59.  On one such occasion, Skowron met Benhamou at a hotel bar in Milan, Italy and gave him an envelope containing $10,000 in cash. *See id.* ¶ 58.

[28]      *See id.* ¶ 64.

[29]      No. 10 Civ. 8266.  An amended complaint was filed on April 13, 2011.

[30]      *See* Compl. ¶ 82.

[31]      17 C.F.R. § 240.10b-5.

[32]      *See* Compl. ¶ 83.

by the funds, FrontPoint, or Morgan Stanley.[33]  Just before the amended complaint

was filed, Morgan Stanley and FrontPoint settled with the SEC as to the claims

against Skowron ("SEC Settlement").[34]  FrontPoint agreed to pay the SEC

$29,017,156 in disgorgement, which represented "the profits gained and/or losses

avoided as a result of the conduct alleged in the [SEC Action],"[35] as well as

$4,003,669 in prejudgment interest (together, "Settlement Amount").[36]  In

accordance with an indemnification obligation arising out of Morgan Stanley's sale

of a majority interest in FrontPoint back to its managers in March 2011, Morgan

Stanley was obligated to indemnify FrontPoint for the Settlement Amount.[37]

### D.    The Criminal Plea and Restitution to Morgan Stanley

In August 2011, Skowron pleaded guilty in the Southern District of

---

[33]    *See id*.

[34]    *See id*. ¶ 84.

[35]    SEC Judgment at 3.

[36]    *See* Compl. ¶ 86.  The entire amount of the SEC Settlement is
$33,020,825.  *See id*.

[37]    *See id*. ¶¶ 87-88.  Morgan Stanley also funded FrontPoint's defense in
a civil class action filed on January 4, 2011 in the District of Connecticut.  *See*
*Brodzinsky v. FrontPoint Partner LLC*, No. 3:11-cv-10; Compl. ¶ 90.  Morgan
Stanley paid $53,020 of the $70,000 settlement in that action pursuant to its
indemnification agreement with FrontPoint.  *See* Compl. ¶ 90.

New York to conspiracy to commit securities fraud and to obstruct justice.[38]
Skowron admitted, in relevant part, to the following: *First*, that he received
material, non-public information regarding HGSI from Benhamou prior to the
January 2008 sale of FrontPoint's remaining HGSI stock; *second*, that Skowron
and Benhamou had agreed to mislead the SEC by lying about the insider trading;
*third*, that Skowron asked Benhamou to lie to Morgan Stanley and FrontPoint's
counsel about the fact that Benhamou provided non-public material information to
Skowron.[39]   Skowron is currently serving a five year sentence for his crimes.[40]

   In December 2011 Morgan Stanley submitted a claim for restitution to
the District Court in the Criminal Action[41] pursuant to the Mandatory Victims
Restitution Act ("MVRA").[42]   Morgan Stanley requested $44,873,878.49,
representing: (1) the $33 million Settlement Amount; (2) approximately $3 million
for legal fees and costs incurred by Morgan Stanley in connection with the SEC
and criminal investigations; (3) approximately $8 million, representing 25% of the

---

[38] *See* Compl. ¶ 65; *United States v. Skowron*, No. 11-CR-0699, (filed
April 12, 2011) ("Criminal Action").

[39] *See* Compl. ¶¶ 66- 69.

[40] *See id*. ¶ 1.

[41] *See id*. ¶ 95.

[42] 18 U.S.C. § 3663A.

compensation Morgan Stanley paid to Skowron between 2007 and 2010.[43]  The

court awarded Morgan Stanley the entire amount of legal fees and costs requested,

along with 20% of the compensation paid to Skowron in the relevant time period.[44]

The Restitution Order recognized that "Skowron actively deceived Morgan Stanley

and frustrated its internal investigation and its attempts to cooperate with the SEC.

This conduct had the effect of prolonging the period during which Skowron

received generous compensation from Morgan Stanley."[45]

   Notwithstanding this recognition, the court denied Morgan Stanley's

request for the $33 million Settlement Amount.[46]  The court stated:

> the amount of the SEC settlement payment represents the
> disgorgement of losses that FrontPoint avoided as a result of
> Skowron's insider trading.  This was not money that FrontPoint
> was legally entitled to retain. . . .  It cannot be said, therefore,
> that the SEC disgorgement represented any loss of money to
> which FrontPoint or Morgan Stanley was ultimately entitled by
> law.[47]

---

[43] *See* Compl. ¶ 95.

[44] *See id.* ¶ 96.

[45] *See Skowron*, 839 F. Supp. 2d at 750.

[46] *See id.* at 746-47.

[47] *Id.*

### E.      The Present Action

Skowron argues that the fraud claim fails because Morgan Stanley's reliance on Skowron's denials of wrongdoing was not reasonable; that Morgan Stanley cannot recover the Settlement Amount because it was never entitled to retain that money and was, therefore, not damaged by the disgorgement of the Settlement Amount to the SEC;[48] and that the contribution claim fails because Morgan Stanley does not allege that it knowingly participated in Skowron's violations of the securities laws.[49]

## III.    LEGAL STANDARD

### A.      Motion to Dismiss Standard

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must "accept[ ] all factual allegations in the complaint as true, and draw[ ] all reasonable inferences in the plaintiff's favor."[50]  The court evaluates the sufficiency of a complaint under the "two-pronged approach" advocated by the Supreme Court

---

[48]     Morgan Stanley seeks, among other damages, the value of the Settlement Amount already denied by the trial court in the Criminal Action.  *See* Compl. ¶ 95.

[49]     *See* Skowron's Memorandum of Law in Support of Its Motion to Dismiss ("Skowron Mem.") at 12.

[50]     *Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 128 (2d Cir. 2011) (quotation marks omitted).

in *Ashcroft v. Iqbal*.[51]  First, "[a] court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'"[52]  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to withstand a motion to dismiss.[53]  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."[54]

To survive a Rule 12(b)(6) motion to dismiss, the allegations in the complaint must meet a standard of "plausibility."[55]  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[56]  Plausibility "is not akin to a probability requirement;" rather, plausibility requires

---

[51]    556 U.S. 662, 679 (2009).

[52]    *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009)).  *Accord Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010).

[53]    *Iqbal*, 556 U.S. at 663 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[54]    *Id.* at 670.   *Accord Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010).

[55]    *Twombly*, 550 U.S. at 564.

[56]    *Iqbal*, 556 U.S. at 678 (quotation marks omitted).

11

"more than a sheer possibility that a defendant has acted unlawfully."[57]  For the purposes of a 12(b)(6) motion, ". . . a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."[58]

## IV.    APPLICABLE LAW

### A.    New York Law Governs the Fraud and Breach of Fiduciary Duty Claims[59]

"[A] federal court exercising diversity jurisdiction generally must apply the choice-of-law rules of the state in which the court sits."[60]  In New York, "the first step in any case presenting a potential choice of law issue is to determine

---

[57]    *Id.* (quotation marks omitted).

[58]    *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

[59]    Morgan Stanley's contribution claim is a federal claim since it is based entirely on the federal securities laws.  *See Picard v. JPMorgan Chase & Co.*, 460 B.R. 84, 99 (S.D.N.Y. 2011) ("[W]here the liability that is the basis for the contribution claim is entirely a creature of federal statute, the [plaintiff] must rely on federal, not state, contribution law") (quotations omitted).  Morgan Stanley argues that it sufficiently alleges a right to contribution under state law because Skowron's improper and criminal conduct gives rights to several state causes of action.  *See* Morgan Stanley Mem. at 23.  The relevant inquiry, however, is not whether Skowron's conduct gives rise to state law claims; the question is whether Morgan Stanley's contribution claim is based solely on violations of federal law.  *See* Compl. ¶¶ 135-136.

[60]    *Liberty Synergistics Inc. v. Microflo Ltd.*, No. 11 Civ. 523, 2013 WL 2361042, at *9 (2d Cir. May 31, 2013).

whether there is an actual conflict between the laws of the jurisdictions involved."[61]  An actual conflict exists when "the applicable law from each jurisdiction provides different substantive rules. . . .  In the absence of substantive difference, however, a New York court will dispense with choice of law analysis; and if New York law is among the relevant choices, New York courts are free to apply it."[62]

There is no conflict between Connecticut and New York law governing the fraud and breach of fiduciary duty claims.[63]  *First*, the basis of Skowron's motion as to the fraud claim is that the Complaint does not adequately allege reasonable reliance,[64] a necessary element of a fraud claim under both New York and Connecticut Law.[65]  *Second*, the basis of Skowron's motion as to breach

---

[61]     *GlobalNet Financial.Com, Inc. v. Frank Crystal & Co.*, 449 F.3d 377, 382 (2d Cir. 2006) (quotations omitted).

[62]     *International Bus. Mach. Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 143 (2d Cir. 2004) (quotations and citations omitted).

[63]     Neither side argues that there is any actual conflict between New York and Connecticut law as it relates to fraud or breach of fiduciary duty.  *See* Skowron Mem. at 15, n.4; Morgan Stanley's Memorandum in Opposition to Skowron's Motion to Dismiss ("Morgan Stanley Mem.") at 11-21.

[64]     *See* Skowron Mem. at 18-19.

[65]     *See, e.g.*, *Abbey v. Skokos*, 509 Fed. App'x 92, 93 (2d Cir. 2013) (New York common law fraud claim); *Aviamax Aviation Ltd. v. Bombardier Aerospace Corp.*, No. 3:08 CV 1958, 2010 WL 1882316, at *6 (D. Conn. May 10, 2010) (Connecticut common law fraud claim).

of fiduciary duty is that the disgorgement of the Settlement Amount did not cause Morgan Stanley to suffer any legally cognizable harm, *i.e.*, Morgan Stanley suffered no damages,[66] a required element of a breach of fiduciary duty claim in both Connecticut and New York.[67]  Because there is no substantive difference between Connecticut and New York law as it relates to the fraud and breach of fiduciary duty claims at issue in this motion, I will apply New York law.

### A.    Fraud

"Under New York law, to state a claim for fraud a plaintiff must demonstrate: (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff."[68]

---

[66]     *See* Skowron Mem. at 15-16.

[67]     *See, e.g.*, *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 138 (2d Cir. 2011) (New York breach of fiduciary duty claim consists of (1) existence of a fiduciary duty; (2) a knowing breach of such duty; and (3) damages resulting from breach); *Powerweb Energy, Inc. v. Hubbell Lighting, Inc.*, No. 3:12 CV 220, 2012 WL 5835392, at *5 (D. Conn. Nov. 16, 2012) (Connecticut breach of fiduciary duty claim consists of (1) existence of a fiduciary duty; (2) breach of such duty; (3) damages sustained by plaintiff; (4) that such damages were proximately caused by the fiduciary's breach of his duty).

[68]     *Solow v. Citigroup, Inc.*, 507 Fed. App'x 81, 83 (2d Cir. 2013).

### 1. Reasonable Reliance

"The question of whether a party's reliance was reasonable is always nettlesome because it is so fact-intensive, and ordinarily a question of fact to be determined at trial."[69] Nevertheless, a sophisticated party's reliance on misrepresentations may be unreasonable as a matter of law where, for instance, "a party has been put on notice of the existence of material facts which have not been documented and he nevertheless proceeds with a transaction without securing the available documentation. . . . [There,] the failure to insert [protective] language into the contract – by itself – renders reliance on the misrepresentation unreasonable as a matter of law."[70] In such a situation – where a sophisticated party enjoys "access to critical information but fail[s] to take advantage of that access"[71] – that party "may truly be said to have willingly assumed the business risk that the facts may not be as represented."[72]

---

[69] *In re Eugenia VI Venture Holdings, Ltd. Litig.*, 649 F. Supp. 2d 105, 119 (S.D.N.Y. 2008) (citing *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 98-99 (2d Cir. 1997)).

[70] *Century Pacific, Inc. v. Hilton Hotels Corp.*, 354 Fed. App'x 496, 498 (2d Cir. 2009) (quotations omitted).

[71] *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1541 (2d Cir. 1997).

[72] *Century Pacific*, 354 Fed. App'x at 498 (quotations omitted).

## B.   Breach of Fiduciary Duty

"The elements of a claim for breach of fiduciary obligation are: (i) the existence of a fiduciary duty; (ii) a knowing breach of that duty; and (iii) damages resulting therefrom."[73]  A breach of fiduciary duty claim will be dismissed where the complaint does not allege a but for connection between the defendant's conduct and the loss of money to which plaintiff was legally entitled.[74]

## C.   Contribution

"Contribution provides that one of two or more joint wrongdoers should not be required to pay more than its share of a common burden."[75]  The Supreme Court found an implied right to contribution under Section 10(b), stating that the "parties against whom contribution is sought [here, Skowron] are, by definition, persons or entities alleged to have violated existing securities laws and who share joint liability for that wrong."[76]  Accordingly, "contribution is allowed

---

[73]      *Johnson*, 660 F.3d at 138.

[74]      *See Trautenberg v. Paul, Weiss, Rifkind, Wharton & Garrison LLP*, 629 F. Supp. 2d 259, 264 (S.D.N.Y. 2007), *aff'd*, 351 Fed. App'x 472 (2d Cir. 2009).

[75]      *In re Motel 6 Sec. Litig.*, No. 93 Civ. 2183, 2000 WL 322782, at *3 (S.D.N.Y. Mar. 28, 2000) (quotations omitted) (citing *Fromer v. Yogel*, 50 F. Supp. 2d 227, 234 (S.D.N.Y. 1999)).

[76]      *Musick, Peeler & Garrett v. Employers Ins. Of Wausau*, 508 U.S. 286, 292 (1993).

only among joint tortfeasors under federal securities laws,"[77] and "such a claim must be based on allegations that all the parties [*i.e.*, plaintiffs and defendants] violated securities laws, not based on allegations that the [d]efendants defrauded [p]laintiffs."[78]  "To present a valid claim that the parties are joint tortfeasors subject to contribution . . . [a]ll that is required are allegations that the parties were joint participants in the fraud alleged."[79]

## V.    DISCUSSION

### A.    Fraud

Skowron argues that Morgan Stanley's fraud claim must be dismissed because the allegation of reasonable reliance is no more than a "bald, conclusory statement"[80] which is at odds with the facts set forth in the Complaint.[81]  Skowron maintains that Morgan Stanley's reliance on Skowron's denials of wrongdoing was unreasonable as a matter of law.[82]  Specifically, Skowron's argument is that (1) "red flags" existed that should have tipped Morgan Stanley to Skowron's deceit and (2)

---

[77]     *In re Motel 6*, 2000 WL 322782 at *3 (citing *Fromer*, 50 F. Supp. 2d at 235).

[78]     *Fromer*, 50 F. Supp. 2d at 235.

[79]     *Id.*

[80]     Skowron Mem. at 19.

[81]     *See id.* at 18-19.

[82]     *See id.*

as a sophisticated investor, Morgan Stanley bore an increased burden to protect itself against fraud by thoroughly investigating the truthfulness of Skowron's statements.[83]  Morgan Stanley responds that it has adequately pled reasonable reliance since the Complaint (1) pleads in detail Skowron's extensive efforts to hide his wrongdoing from both Morgan Stanley and the government and (2) pleads reasonable reliance on those misrepresentations.[84]

        Because Skowron asks this court to impose on sophisticated investors a sweeping duty to investigate the representations of its employees with the skill and vigor equivalent to that of a prosecutor, his argument fails.  Sophisticated investors have a duty to protect themselves against fraud by availing themselves of readily accessible information regarding a party's representations in the context of a business transaction.[85]  But the representations made by Skowron – *i.e.*, that he did

---

[83]        *See id.* at 21.

[84]        *See* Morgan Stanley Mem. at 11-12.

[85]        The legal authority relied on by Skowron is not to the contrary.  In those cases, sophisticated investors sued defendants for fraud, and the investors' reliance upon representations made by defendants in the context of major business transactions was deemed unreasonable as a matter of law because the investors could easily have uncovered the misrepresentation by consulting information readily available to them.  *See, e.g.*, *Emergent Capital Inv. Mgmt., LLC v. Stonepath Grp., Inc.*, 343 F.3d 189, 195-96 (2d Cir. 2003) (dismissing fraud claim where plaintiff, a sophisticated investor, relied on defendant's oral representations regarding a particular investment without requiring that those representations be reflected in the written stock purchase agreement between the parties); *Terra Sec. Asa Konkursbo v. Citigroup, Inc.*, 740 F. Supp. 2d 441, 449-450 (S.D.N.Y. 2010)

not receive or trade on non-public information and that he never had an inappropriate relationship with Benhamou[86] – were not assertions that could be readily verified or disproved by Morgan Stanley.  Indeed, it took the SEC three years to investigate Skowron's misconduct and file an action against him.[87] Moreover, Skowron's lies did not relate to business transactions about which Morgan Stanley is an expert.  Rather, the lies concerned the relationship between Benhamou and Skowron and what Skowron chose to do with information he obtained via that relationship.  And the one person who could have revealed Skowron's lies to Morgan Stanley – Benhamou – was part of the cover-up.[88]  I decline to impose on Morgan Stanley the duty to ferret out the truth from a man who lied for years not only to Morgan Stanley but also to his own lawyers and to the government.

        The Complaint pleads facts sufficient to raise an inference that Morgan Stanley reasonably relied on Skowron's denials of wrongdoing.  The Complaint

---

(dismissing fraud claim where plaintiffs, sophisticated investors, relied on an allegedly misleading graph presented by defendant, but the information underpinning that graph was "public and readily available to [plaintiffs] before their entering the securities transaction at issue.").

[86]     *See* Compl. ¶ 50.

[87]     *See id.* ¶¶ 46, 82.

[88]     *See id.* ¶¶ 52-61.

includes a detailed list of Skowron's misrepresentations – all of which relate to Skowron's relationship with Benhamou and the circumstances surrounding the sale of HGSI stock – and alleges that Morgan Stanley's reliance upon such lies was reasonable.[89]  That reliance was not unreasonable as a matter of law based on the facts pleaded in the Complaint.  Accordingly, Skowron's motion to dismiss the fraud claim is denied.

### B.    Breach of Fiduciary Duty

Skowron urges dismissal of Morgan Stanley's breach of fiduciary duty claim insofar as it seeks to recover the Settlement Amount from the SEC Action.[90] Morgan Stanley was not damaged by the disgorgement of the Settlement Amount to the SEC, Skowron argues, because the Settlement Amount represented the losses avoided by FrontPoint as a result of Skowron's criminal misconduct and, as such, was not money that Morgan Stanley was ever entitled to retain.[91]  Morgan Stanley argues that it is entitled to payment of the Settlement Amount as damages caused by Skowron because it paid that amount on behalf of FrontPoint pursuant to an indemnification agreement out of funds "lawfully held in the normal course of

---

[89]      *See* Compl. ¶¶ 119, 122.

[90]      *See* Skowron Mem. at 15.

[91]      *See id.* at 15-17.

business."[92]  Morgan Stanley insists that although the trial court in the Criminal Action already found that Morgan Stanley was not entitled to the Settlement Amount, that decision is irrelevant here since it only addressed Morgan Stanley's right to restitution under the MVRA.[93]

Morgan Stanley's argument ignores the fact that neither FrontPoint nor Morgan Stanley were ever entitled to retain the money represented by the Settlement Amount.  The fact that Morgan Stanley paid the Settlement Amount because of an indemnification agreement with FrontPoint – as opposed to being compelled to pay it under the SEC Judgment – is irrelevant.  As both the trial court and Morgan Stanley recognized, Morgan Stanley voluntarily agreed to indemnify FrontPoint for any liabilities "including third-party claims brought by governmental entities arising out of the alleged violations of the law relating to Skowron's HGSI trades."[94]  As such, Morgan Stanley "effectively stands in FrontPoint's shoes."[95]

That the losses were avoided because of Skowron's insider trading and not Morgan Stanley's wrongdoing does not alter the conclusion that the Settlement Amount represented money which FrontPoint and Morgan Stanley were never

---

[92]     Morgan Stanley Mem. at 19-20.

[93]     *See id.* at 21.

[94]     Compl. ¶ 88.  *See also Skowron*, 839 F. Supp. 2d at 474.

[95]     *Skowron*, 839 F. Supp. 2d at 474.

entitled to retain.  The SEC Judgment makes clear that the Settlement Amount

represented the "profits gained and/or losses avoided [by FrontPoint] as a result of

the conduct alleged in the [c]omplaint," *i.e.*, Skowron's insider trading,[96] not profits

to which either FrontPoint or Morgan Stanley were entitled.[97]  Morgan Stanley's

claim for breach of fiduciary duty is dismissed insofar as its damages are based on

the Settlement Amount.[98]

###    C.    Contribution

Skowron argues that Morgan Stanley's contribution claim fails because

the Complaint does not allege that Morgan Stanley and Skowron were joint

tortfeasors, as is required to assert such a claim under Section 10(b).[99]  Morgan

Stanley responds that the SEC Judgment's finding of joint and several liability

---

[96]    SEC Judgment at 3.

[97]    I am not the first judge in this district to reach this conclusion. *See Skowron*, 839 F. Supp. 2d at 746-47.  Morgan Stanley's argument that this decision is irrelevant is without merit.  While it is true that *Skowron* considered only restitution under the MVRA, Morgan Stanley sought the same payment (the Settlement Amount) from the same party (Skowron).  *See id.* at 742.  Moreover, restitution was refused for the very same reasons as stated *infra* Part IV.B.  *See id.* at 746-47.

[98]    Morgan Stanley seeks other damages for breach of fiduciary duty, including, for example, attorneys' fees and costs related to investigations by the United States Attorneys Office, the SEC, and Morgan Stanley itself.  *See* Compl. ¶ 114.  Accordingly, the breach of fiduciary duty claim is not dismissed in its entirety.

[99]    *See* Skowron Mem. at 12-13.

amongst Skowron and FrontPoint obviates the need for Morgan Stanley to make such an allegation.[100]

       Morgan Stanley conflates a finding of joint and several liability among Skowron and FrontPoint with an allegation that the parties were joint tortfeasors. Though FrontPoint and Skowron were held jointly and severally liable for the Settlement Amount in the SEC Action,[101] Morgan Stanley does not allege joint misconduct either between FrontPoint and Skowron or between Morgan Stanley and Skowron.[102]  Rather, its contribution claim is based entirely on the allegation that Skowron violated federal securities laws and that Morgan Stanley was harmed as a result.[103]  Just as in *Fromer v. Yogel*,[104] "nothing in the Complaint [] can be read as an allegation of fraudulent conduct by" Morgan Stanley or by FrontPoint, whom Morgan Stanley was required to indemnify.[105]  As such, Morgan Stanley's

---

[100]    *See* Morgan Stanley Mem. at 22.

[101]    *See* SEC Judgment at 3.

[102]    *See* Compl. ¶¶ 134-135.

[103]    *See id*. ¶¶ 135-142.

[104]    50 F. Supp. 2d 227 (S.D.N.Y. 1999).

[105]    *Id.* at 235.  *See also* Compl. ¶ 134.  It is possible that Morgan Stanley's claim could survive if it alleged that Skowron and FrontPoint were joint tortfeasors, since in that situation Morgan Stanley would be arguing that it should not be required to pay more than its share of the common burden of one of two joint wrongdoers, i.e., FrontPoint and Skowron.  Such allegations were not made in the Complaint, though, since the SEC never alleged joint wrongdoing between

contribution claim fails as a matter of law.

## VI.    CONCLUSION

      In light of the foregoing, Skowron's motion is granted with respect to Morgan Stanley's contribution and breach of fiduciary duty claims, and denied with respect to the fraud claim.  The Clerk of the Court is directed to close this motion (Dkt. No. 4).  A status conference is scheduled for Wednesday, July 31, 2013 at 4:30 p.m.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
             July 23, 2013

---

Skowron and FrontPoint.  *See* Compl. ¶¶ 135-137; Amended Complaint in *SEC v. Skowron*, No. 10 Civ. 8266 (S.D.N.Y. filed April 12, 2011) (naming the FrontPoint funds only as relief defendants).

**- Appearances -**

**For Plaintiff Morgan Stanley:**

John A. Boyle, Esq.
Kevin H. Marino, Esq.
Marino Tortorella & Boyle, P.C.
437 Southern Boulevard
Chatham, NJ 07928
(973) 824-9300


**For Defendant Joseph Skowron III:**

Joshua H. Epstein, Esq.
Sorinrand LLP
515 Madison Avenue, 13th Floor
New York, NY 10022
(212) 600-2085