**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------ X

MORGAN STANLEY,

           **Plaintiff,**

        - against -

JOSEPH F. "CHIP" SKOWRON III,

           **Defendant.**

------------------------------------------------------------------ X

**OPINION AND**
**ORDER**

**12 Civ. 8016 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

Morgan Stanley brings this action against Joseph F. "Chip" Skowron III seeking compensatory and punitive damages, disgorgement, reimbursement, contribution, and attorneys' fees in connection with Skowron's acts of insider trading while employed at Morgan Stanley.  The Complaint asserts five causes of action: Faithless Servant, Breach of Fiduciary Duty, Fraud, Breach of Contract, and Contribution.[1]  On May 3, 2013, Skowron moved to dismiss the fraud, contribution, and part of the breach of fiduciary duty claims.  I granted Skowron's motion with respect to the contribution and fiduciary duty claims, but denied the

---

[1]     *See* Complaint.

1

motion with respect to the fraud claim.[2]

　　　Morgan Stanley now moves for partial summary judgement on its faithless servant claim, which seeks disgorgement of Skowron's salary from April 2007 through November 2010.[3]  For the following reasons, Morgan Stanley's motion is GRANTED.

## II.　BACKGROUND

　　　In December 2006, Morgan Stanley acquired a hedge-fund management company called FrontPoint Partners LLC ("FrontPoint").[4]  Skowron was employed as a co-portfolio manager at FrontPoint at the time of the acquisition.[5]  By letter dated October 31, 2006 (the "Offer Letter"), Morgan Stanley offered Skowron a position as Managing Director and Senior Portfolio Manager.[6]  The Offer Letter states that Skowron will receive an annual base salary of $1.5 million, plus Management Fees and Incentive Fees to be calculated based

---

[2]　　*See Morgan Stanley v. Skowron,* No. 12 Civ. 8016, 2013 WL 3822217 (S.D.N.Y. July 23, 2013).

[3]　　*See* Memorandum of Law in Support of Morgan Stanley's Motion for Partial Summary Judgment ("Pl. Mem.") at 2.

[4]　　*See* Plaintiff's Statement of Undisputed Material Facts in Support of Its Motion for Partial Summary Judgment ("Pl. 56.1") ¶¶ 1–2.

[5]　　*See id.* ¶ 3.

[6]　　*See id.* ¶ 4.

on the overall size and performance of the investment funds managed by Skowron and his co-portfolio managers.[7]

The Offer Letter was accompanied by Morgan Stanley's standard sign-on agreement (the "Sign-on Agreement"), which was made "a material part of the Firm's offer of employment."[8]  The Sign-on Agreement contains a choice-of-law provision that states: "This Agreement shall be governed by the laws of the State of New York without regard to any conflicts or choice of law principles."[9]

Both the Offer Letter and the Sign-on Agreement require Skowron to comply with Morgan Stanley's Code of Conduct.[10]  The Code of Conduct prohibits insider trading and requires employees to safeguard confidential information and cooperate fully with governmental and internal investigations.[11]  The Code of Conduct also requires employees to promptly notify Morgan Stanley if they may have violated the law or the firm's policies.[12]

---

[7]      See id. ¶¶ 5, 12.

[8]      Offer Letter, Ex. 1 to 8/28/13 Declaration of Joshua Balik-Klein, Executive Director in the Human Resources Department at Morgan Stanley, at 13.

[9]      Sign-on Agreement, Ex. 5 to 9/6/13 Declaration of Kevin H. Marino, plaintiff's counsel, ("Marino Decl.") at 4.

[10]      See Offer Letter at 13; Sign-on Agreement at 2, 4.

[11]      See Code of Conduct, Ex. 6 to Marino Decl. at 10–12, 16.

[12]      See id. at 20.

3

Between April 12, 2007 and December 1, 2010, Morgan Stanley paid Skowron $31,067,356.76 in compensation.[13]  On August 15, 2011, Skowron pled guilty to conspiracy to commit insider trading from at least April 2007 through November 2010.[14]  In his plea colloquy, Skowron admitted to selling stocks held by Morgan Stanley's portfolios on the basis of material non-public information, and then lying to the SEC under oath regarding his receipt of such information.[15] The above actions took place during his tenure as a Morgan Stanley employee.[16]

At the sentencing hearing, Judge Denise Cote sentenced Skowron to five years in prison and awarded Morgan Stanley restitution of twenty percent of Skowron's compensation during the period of the conspiracy.[17]  Morgan Stanley then brought this civil case against Skowron seeking forfeiture of the remaining compensation paid during the conspiracy period, among other remedies.

## III.   STANDARD OF REVIEW

Summary judgment is appropriate "only where, construing all the

---

[13]     *See* Pl. 56.1 ¶ 14.

[14]     *See id.* ¶¶ 41–42.

[15]     *See* 8/15/11 Transcript of Plea Proceedings, *United States v. Skowron*, 839 F. Supp. 2d 740 (S.D.N.Y. 2012), *aff'd*, 529 Fed. App'x 71 (2d Cir. 2013), Ex. 4 to Marino Decl., at 14–17.

[16]     *See id.*

[17]     *See* Pl. 56.1 ¶¶ 44–45.

evidence in the light most favorable to the non-movant and drawing all reasonable inferences in that party's favor, there is 'no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law.'"[18]  "A genuine dispute exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[19]

     "The moving party bears the burden of establishing the absence of any genuine issue of material fact."[20]  To defeat a motion for summary judgment, the non-moving party must show more than "some metaphysical doubt as to the material facts,"[21] and "'may not rely on conclusory allegations or unsubstantiated speculation.'"[22]

     In deciding a motion for summary judgment, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual

---

[18] *Rivera v. Rochester Genesee Reg'l Transp. Auth.,* 702 F.3d 685, 693 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)) (some quotation marks omitted).

[19] *Finn v. New York State Office of Mental Health–Rockland Psychiatric Ctr.,* 489 Fed. App'x 513, 514 (2d Cir. 2012) (quotation marks omitted).

[20] *Zalaski v. City of Bridgeport Police Dep't,* 613 F.3d 336, 340 (2d Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

[21] *Gorzynski v. JetBlue Airways Corp.,* 596 F.3d 93, 101 (2d Cir. 2010) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)).

[22] *Robinson v. Allstate Ins. Co.,* 508 Fed. App'x 7, 9 (2d Cir. 2013) (quoting *Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir. 1998)).

issues to be tried."[23]  "'Credibility determinations, the weighing of the evidence,
and the drawing of legitimate inferences from the facts are jury functions, not those
of a judge.'"[24]

## IV.   APPLICABLE LAW

### A.   New York Faithless Servant Doctrine

New York courts "continue to apply two alternative standards for
determining whether an employee's conduct warrants forfeiture under the faithless
servant doctrine."[25]  Despite the persistence of conflicting standards, "New York
courts have not reconciled any differences between them, or defined the
circumstances, if any, in which one standard should apply rather than the other."[26]

The first standard is met when "the misconduct and unfaithfulness . . .
substantially violates the contract of service"[27] such that it "permeate[s] [the

---

[23]      *Cuff ex rel. B.C. v. Valley Cent. School Dist.,* 677 F.3d 109, 119 (2d
Cir. 2012) (quotation marks and citations omitted).

[24]      *Redd v. New York State Div. of Parole,* 678 F.3d 166, 174 (2d Cir.
2012) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150
(2000)).

[25]      *Carco Grp., Inc. v. Maconachy,* 383 Fed. App'x 73, 76 (2d Cir. 2010)
("*Carco I*").

[26]      *Phansalkar v. Andersen Weinroth & Co., L.P.,* 344 F.3d 184, 202 (2d
Cir. 2003).

[27]      *Id.* at 201 (quoting *Turner v. Konwenhoven*, 100 N.Y. 115, 120
(1885)).

employee's] service in its most material and substantial part."[28]  The second

standard requires only "misconduct [] that rises to the level of a breach of a duty of

loyalty or good faith."[29]  In other words, it is sufficient that the employee "acts

adversely to his employer in any part of the transaction, or omits to disclose any

interest which would naturally influence his conduct in dealing with the subject of

the employment."[30]

      An employee who is found to be faithless normally forfeits all

compensation received during the period of disloyalty, regardless of whether the

employer suffered any damages.[31]  However, the Second Circuit has carved out a

limited exception where compensation is expressly allocated among discrete tasks,

---

[28]    *Id.* at 203 (quoting *Abramson v. Dry Goods Refolding Co.,* 166 N.Y.S. 771, 773 (1st Dep't 1917)).

[29]    *Id.* at 202.

[30]    *Id.* (quoting *Murray v. Beard*, 102 N.Y. 505, 508 (1886)).

[31]    *See Carco I,* 383 Fed. App'x at 76 ("A person who is found to be faithless in his performance of services is generally liable for all compensation from the date of the breach, and the faithlessness need not have caused damages."); *Phansalkar*, 344 F.3d at 188 (holding that "New York's faithless servant doctrine requires Phansalkar to forfeit all compensation received after his first disloyal act"); *Soam Corp. v. Trane Co.,* 608 N.Y.S.2d 177, 178 (1st Dep't 1994) (noting that "New York's strict application of the forfeiture doctrine [] mandates the forfeiture of all compensation, whether commissions or salary, where, as here, one who owes a duty of fidelity to a principal is faithless in the performance of his services").

such as commissions.  In such cases, the employee may keep compensation derived

from any transactions that were separate from and untainted by the disloyalty.[32]

Specifically, apportionment is available when:

> (1) the parties [] agreed that the agent will be paid on a
> task-by-task basis (e.g., a commission on each sale arranged by
> the agent), (2) the agent engaged in no misconduct at all with
> respect to certain tasks, and (3) the agent's disloyalty with respect
> to other tasks "neither tainted nor interfered with the completion
> of" the tasks as to which the agent was loyal.[33]

## V.   DISCUSSION

### A.   New York Law Governs the Faithless Servant Claim

Morgan Stanley argues that New York law applies because the

faithless servant claim is based on the employment contract, which incorporates the

choice of law provision in the Sign-on Agreement.[34]  Skowron argues that the

"narrow" choice of law provision in the Sign-on Agreement covers only breach of

---

[32]      *See Phansalkar*, 344 F.3d at 205.  *See also Design Strategy, Inc. v.
Davis*, 469 F.3d 284, 301–02 (2d Cir. 2006) (apportioning compensation where
employee was a sales representative paid partially through individual sales
commissions); *Sequa Corp. v. GBJ Corp.,* 156 F.3d 136, 146–47 (2d Cir. 1998)
(apportioning compensation where employment contract provided that employee
would receive fee for each leasing transaction completed).

[33]      *Phansalkar*, 344 F.3d at 205 (quoting *Musico v. Champion Credit
Corp.*, 764 F.2d 102, 114 (2d Cir. 1985)).

[34]      *See* Reply Memorandum of Law in Further Support of Morgan
Stanley's Motion for Partial Summary Judgment ("Pl. Reply Mem.") at 1–2.

contract claims, not causes of action that "relate to[] or arise from" the contract.[35]

Because he is a Connecticut resident who allegedly performed most of his services

for Morgan Stanley in Connecticut, Skowron argues that Connecticut law should

apply.[36]

In *Carco Group., Inc. v. Maconachy*, the Second Circuit held that

faithless servant claims are in essence contract claims.[37]  The court reasoned as

follows:

> The faithless servant doctrine arises out of an agency or
> employment relationship, and New York courts have repeatedly
> and consistently used the rules and terminology of contract law in
> evaluating faithless servant claims. . . .  Bearing in mind that the
> contract is one of employment and that the claims are that this
> defendant transgressed against the duties of loyalty inherent in the
> employer-employee relationship, it is clear that the controversy
> arises out of and relates to the contract which is the genesis of the
> relationship and the consequent duty.  Similarly, this Court has
> described such claims as grounded in the law of agency, . . .  a
> body of law in which [c]ontract law . . . defines many of the rights
> . . . and provides the remedies available for breach.[38]

---

[35]    Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Partial Summary Judgment ("Def. Mem.") at 4.

[36]    *See id.* at 1.

[37]    *See Carco Grp., Inc. v. Maconachy*, 718 F.3d 72, 84 (2d Cir. 2013) ("*Carco II*") ("We reject Maconachy's premise that a faithless servant claim is not a contract claim.").

[38]    *Id.* at 84–85 (quotation marks and citations omitted).

Because the agreement at issue in *Carco* provided for recovery of attorneys' fees in case of "any breach of . . . this Agreement," the court affirmed the district court's decision to award fees on the basis of a successful faithless servant claim.[39] Similarly, Morgan Stanley's faithless servant claim arises from his employment contract, which incorporates the Sign-on Agreement's choice of law provision. Thus, New York law governs the claim.

## B.   Skowron Is a Faithless Servant Under Either Standard

It is not necessary to decide which New York standard applies, because Skowron is a faithless servant under even the more stringent standard.[40] Skowron does not contest that his behavior constituted a breach of the duty of loyalty and good faith.[41]  Instead, he argues that his misconduct did not substantially violate the terms of his employment contract such that it permeated

---

[39]    *Id.* at 85 ("Because § 9.1 of the [Asset Purchase Agreement ("APA")] allows for recovery of attorneys' fees for 'any breach' of the APA itself or 'any document or other writing delivered pursuant hereto,' it was proper to award attorneys' fees on the faithless servant claim because it arose from Maconachy's employment agreement, which the District Court determined to be mutually dependent on the APA.").

[40]    *See, e.g., Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC,* 813 F. Supp. 2d 489, 525 (S.D.N.Y. 2011) (declining to choose a standard because employee was faithless under either).

[41]    *See* Def. Mem. at 10.

his service as an employee.[42]

Morgan Stanley's Code of Conduct, which was made a condition of Skowron's employment, expressly prohibits insider trading and emphasizes the importance of preserving confidentiality.[43]  It states in bold italicized letters: "You may never, under any circumstances, trade, encourage others to trade, or recommend securities or other financial instruments based on, and in some circumstances, while in possession of, inside information."[44]  The Code requires employees to know and comply with all applicable securities laws,[45] and states that "confidential information generated and gathered in our business is a valuable asset . . . [that] must be protected from the time of its creation or receipt until its authorized disposal."[46]  Indeed, several full pages of the Code are devoted to protecting confidential information and preventing the "misuse of inside information."[47]  The Code also requires employees to cooperate fully with governmental and internal investigations, and to promptly self-report any possible

---

[42]     *See id.*

[43]     *See* Code of Conduct at 10–12.

[44]     *Id.* at 12.

[45]     *See id.* at 5.

[46]     *Id.* at 10.

[47]     *Id.* at 12.

violation of law or company policy to their superiors.[48]

Skowron argues that his breach of the above provisions was limited and did not permeate his service in substantial part.  This argument lacks any merit. Insider trading is the ultimate abuse of a portfolio manager's position and privileges because it goes to the heart of his "primary areas of responsibility."[49] Indeed, "[t]he duty of an employee not to use or divulge confidential knowledge acquired during his employment is implicit in the employer-employee relation, is an absolute, and not a relative duty."[50]  That duty is all the more crucial for a portfolio manager who is "entrusted to lawfully invest hundreds of millions of dollars and to safeguard the Firm's reputation."[51]  In addition to exposing Morgan Stanley to government investigations and direct financial losses, Skowron's behavior damaged the firm's reputation, a valuable corporate asset.[52]

---

[48]     *See id.* at 16, 20.

[49]     *Phansalkar,* 344 F.3d at 202.

[50]     *Schanfield v. Sojitz Corp. of Am.,* 663 F. Supp. 2d 305, 349 (S.D.N.Y. 2009) (citations omitted) (finding auditor's argument that his misuse of confidential documents was "consistent with the performance of his job duties" to be "ludicrous").

[51]     Pl. Mem. at 8.

[52]     *See* Victim Impact Statement of Arthur Lev, Managing Director of Morgan Stanley, Ex. 3 to Marino Decl. at 3 ("Morgan Stanley has also suffered significant reputational harm as a result of Skowron's criminal conduct.  Beyond the harm attendant to having one of its managing directors plead guilty to serious

Although Skowron only admitted to one instance of insider trading, he admittedly lied and covered up his involvement for years afterwards.[53]  Thus, Skowron's acts of disloyalty "occurred repeatedly," "lasted for many months," "persisted boldly through an opportunity to correct them," and occurred in his "primary areas of responsibility."[54]  Under these circumstances, it is patently clear that Skowron's actions substantially violated the terms of his employment contract and permeated his service.

Skowron points out that, although he admitted during his criminal plea colloquy that he lied to the SEC and arranged for his co-conspirator to do the same, he never admitted lying to Morgan Stanley.  As a result, Skowron argues, "there are no facts in the record before this Court sufficient to establish the extent to which Skowron's misconduct 'permeated' his service."[55]  In response, Morgan Stanley argues that the criminal sentencing findings and the allegations in the

criminal conduct, the firm expended its own reputational capital by defending Skowron during the years it believed . . . that he had not violated the law.").  *See also* Code of Conduct at 20 (requiring employees to promptly report any conduct "that could have an impact on the Firm's reputation").

[53]    *See Phansalkar,* 344 F.3d at 201–02 (noting that New York courts have "found disloyalty not to be 'substantial' only where the disloyalty consisted of a single act, or where the employer knew of and tolerated the behavior").

[54]    *Id.* at 202.

[55]    Def. Mem. at 10.

criminal information are entitled to collateral estoppel effect in the instant
lawsuit.[56]

However, the question of collateral estoppel is immaterial. It is
sufficient that Skowron knowingly committed insider trading, explicitly lied to the
SEC under oath, and failed to disclose his participation to Morgan Stanley over the
course of several years. This is especially true given that Morgan Stanley's Code
of Conduct imposed on Skowron an affirmative duty to disclose any wrongdoing.[57]
No reasonable jury could conclude that Skowron's insider trading and subsequent
cover-up did not substantially violate the terms of his employment and permeate
his service. Because Skowron has raised no genuine issue of material fact for trial,
Morgan Stanley is entitled to summary judgment on its faithless servant claim.

## C.    Skowron Must Forfeit All Compensation Received During the Period of Disloyalty

Skowron is only entitled to retain some portion of his compensation if
he was paid on a "task-by-task" basis and can demonstrate that certain transactions
were wholly untainted by his disloyalty.[58] The Offer Letter indicates that Skowron
was paid a base salary as well as Management Fees and Incentive Fees, which were

---

[56]    *See* Pl. Reply Mem. at 4–7.

[57]    *See* Code of Conduct at 20.

[58]    *See Phansalkar*, 344 F.3d at 205.

calculated partially based on the size and performance of the funds he managed.[59]
Although the Management and Incentive Fees were determined in part by
Skowron's performance, they were not linked to separate and discrete transactions.
Tellingly, the fees were calculated monthly or yearly rather than by transaction.[60]
Moreover, the overall performance of the funds cannot be attributed solely to
Skowron, because his two co-portfolio managers also had decision-making
authority over the accounts.[61]  For these reasons, the Management and Incentive
Fees resemble performance bonuses rather than commissions, and apportionment is
not available under *Phansalkar*.  Because Skowron was not paid on a task-by-task
basis, he must forfeit one hundred percent of the compensation he received during
the period of disloyalty as a matter of law.[62]

---

[59]     *See* Pl. 56.1 ¶¶ 5, 12.

[60]     *See* Offer Letter at 6; Pl. 56.1 ¶ 6.

[61]     *See Phansalkar,* 344 F.3d at 208 (denying apportionment because
reward compensation was based on "transactions for which [employee] had
substantial responsibility" as well as transactions for which he had limited or no
responsibility, and did not "limit compensation to specific amounts paid for the
completion of specific tasks").

[62]     Morgan Stanley originally requested summary judgment on the
question of punitive damages in addition to forfeiture of compensation.  However,
that request was withdrawn on December 19, 2013 in a letter endorsed by the
Court.

**D.     Morgan Stanley's Faithless Servant Claim Is Not Barred by the Employment Contract**

Skowron argues that Morgan Stanley's faithless servant claim is an equitable claim barred by the existence of a contract covering the subject of the dispute.[63]  He points out that New York courts will not impose quasi-contractual equitable remedies – such as constructive trust or unjust enrichment – where a valid contract exists.[64]

However, because New York law defines a faithless servant by reference to the employment contract, the argument Skowron advances would undercut the faithless servant doctrine.[65]  Indeed, the Second Circuit has held that a faithless servant claim may be granted on the same facts that establish a breach of the employment contract in the same action.[66]  Thus, the existence of a contract between Skowron and Morgan Stanley prohibiting insider trading does not

---

[63]     *See* Def. Mem. at 13–15.

[64]     *See id.*

[65]     *See Phansalkar,* 344 F.3d at 201 (noting that under New York law, an employee is faithless when "the misconduct and unfaithfulness . . . substantially violates the contract of service").

[66]     *See Carco I*, 383 Fed. App'x at 74, 77 (affirming district court's grant of faithless servant claim and claim for breach of the employment contract based on the same facts).

16

preclude Morgan Stanley's faithless servant claim.[67]

## VI.   CONCLUSION

For the foregoing reasons, Morgan Stanley's motion for partial summary judgment on its faithless servant claim is GRANTED. Skowron must forfeit the full measure of compensation he received from Morgan Stanley during the damages period, namely $31,067,356.76, offset by the amount ordered to be paid as restitution in the criminal proceeding. The Clerk of the Court is directed to close this motion [Docket Entry No. 27]. A conference is scheduled for January 9, 2014 at 4:30 pm.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      December 19, 2013
            New York, New York

---

[67]     See Samba Enter., LLC v. iMesh, Inc., No. 06 Civ. 7660, 2009 WL 705537, at *9 (S.D.N.Y. Mar. 19, 2009), aff'd, 390 Fed. App'x 55 (2d Cir. 2010) (finding breach of fiduciary duty under faithless servant doctrine and ordering forfeiture of compensation despite existence of valid employment contract). See also Probulk Carriers Ltd. v. Peraco Chartering USA LLC, No. 11 Civ. 5686, 2012 WL 3095319, at *8 (S.D.N.Y. July 20, 2012) (noting that there is "no authority instructing that the [faithless servant] doctrine must be pled as separate claim apart from a breach of contract claim").

**- Appearances -**

**For Plaintiff:**

John A. Boyle, Esq.
Kevin H. Marino, Esq.
Marino Tortorella, P.C.
437 Southern Boulevard
Chatham, NJ 07928
(973) 824-9300
Fax: (973) 824-8425


**For Defendant:**

Joshua H. Epstein, Esq.
Amanda Lee Van Hoose, Esq.
Sorinrand LLP
515 Madison Ave., 13th Floor
New York, NY 10022
(646) 354-5324
Fax: (212) 588-1710