```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

MORGAN STANLEY,

            Plaintiff,

       v.                            12 CV 8016 (SAS)

JOSEPH SKOWRON, III,

            Defendant.

------------------------------x
                                     January 17, 2014
                                     4:45 p.m.
Before:

                HON. SHIRA A. SCHEINDLIN,

                                     District Judge

                       APPEARANCES

MARINO, TORTORELLA & BOYLE, P.C.
     Attorneys for Plaintiff
BY:  KEVIN H. MARINO
     JOHN A. BOYLE


SORINRAND LLP
     Attorneys for Defendant
BY:  JOSHUA H. EPSTEIN
```

1           THE COURT:  Mr. Epstein?  Mr. Marino?

2           MR. MARINO:  Yes.  Good afternoon, your Honor.

3           THE COURT:  Mr. Boyle.

4           MR. BOYLE:  Yes.

5           THE COURT:  Sorry for the long wait.  We are

6  completing a non-jury trial that went all week from Monday

7  morning through Friday night and was very complicated.

8           MR. EPSTEIN:  Your Honor, is it okay if I stand over

9  here?

10          THE COURT:  I know which one is which.  It doesn't

11 matter.

12          Okay.  So anyway, please be seated.  I just apologize

13 for the long wait.

14          What you're here to talk about is whether there should

15 be a 404(b) certification on the faithless-servant decision

16 that the Court issued, and turn it into a final judgment so it

17 could be ripe for appeal.  And both sides have written letters.

18 The plaintiff wrote a letter December 23rd, 2013.  And the

19 defendant wrote a letter January 3rd, 2014 in response.  The

20 plaintiff, of course, says it should be certified.  It can be

21 separated from all remaining claims because the

22 faithless-servant claim's essentially a contract claim, but the

23 fraud claim or the breach of fiduciary duty claims are based on

24 tort.  But there's even an express breach of contract claim

25 remaining.  Regarding the breach of undertaking to repay legal

1     fees, I'll put that aside.
2              So Mr. Skowron says, well, it would be duplicative
3     because the claims are intertwined and the standard for breach
4     of fiduciary duty is misconduct that rises to the level of
5     breach of duty of loyalty or good faith -- at least that's the
6     so-called lower standard.  There are kind of two standards in
7     New York, and I didn't have to decide which was which in my
8     earlier analysis because it didn't matter which I found -- they
9     were pretty well -- either way, it was faithless under either
10    doctrine, so I didn't make a decision on that.
11             What troubles me in looking at all this is a couple of
12    things.  I don't understand really why the plaintiff doesn't
13    just dismiss all the remaining claims.  I mean, how much more
14    money do you want anyhow?  You got it all on the
15    faithless-servant, we'd be done with this.
16             Secondly, you don't want to do that, I don't
17    understand why you wouldn't move for summary judgment on the
18    breach of fiduciary duty, because defendant almost concedes
19    under at least the lower standard misconduct arises to the
20    level of breach of a duty of loyalty or good faith.  So I'm not
21    sure why we're dealing with 54(b) instead of wrapping up the
22    case, tying it in a bow and sending it to the Circuit so that
23    you can get your judgment if it's all affirmed.  I don't really
24    understand your strategy.  This seems to be almost an easy
25    case.  This guy's been convicted.  This guy's been sentenced.

1    I mean, how is he going to get around being faithless-servant?
2    He's not.  So what are we doing, holding up three more claims,
3    worrying about a jury trial?  It's time to stop that waste of
4    time and get going with a judgment it's not search 54(b), as
5    closing us out in the district court.
6              MR. MARINO:  I appreciate your Honor's questions about
7    the strategy, and maybe I can explain it this way.  There isn't
8    any doubt that the cleanest claim, the one that certainly would
9    not involve, and as your Honor determined, did not involve any
10   fact issues whatsoever, no need for discovery was the
11   faithless-servant.
12             THE COURT:  So why do we need more claims and more
13   judgments and a jury and another year or two of this?  What do
14   you need?
15             MR. MARINO:  So the reason I want to have your Honor
16   certify the judgment as --
17             THE COURT:  Well, I know what you want. What about
18   what I want?  Why don't you figure out how to close the case in
19   the district court so I don't have to go into an analysis of
20   whether they're duplicative and intertwined.  It's just getting
21   repetitive judgments.  And good luck collecting.  I mean, this
22   guy's sitting there in jail anyway.  I don't know what more
23   there is to collect, but maybe there is.  But get a judgment
24   and go after it.  How much has he already had to forfeit on the
25   criminal side, if it's called that, or restitution or

1    forfeiture or both?
2            MR. MARINO:  He's had to forfeit $10.2 million.
3            THE COURT:  And that's forfeited.  How about
4    restitution?
5            MR. MARINO:  That's all told, it's 10.2 in
6    restitution.
7            MR. EPSTEIN:  That was to Morgan Stanley, your Honor.
8    There was of course money forfeited to the government and the
9    SEC.
10           THE COURT:  Right, so --
11           MR. EPSTEIN:  There was more than that, actually.
12           THE COURT:  Yes, so it's 10.2 million to Morgan
13   Stanley.
14           MR. EPSTEIN:  Already.  They've gotten that money.
15           THE COURT:  And?
16           MR. EPSTEIN:  And --
17           THE COURT:  Restitution order --
18           MR. EPSTEIN:  There was five million to DOJ, I believe
19   seven million to the SEC and some other odds and ends.
20           THE COURT:  Yes, so there is another 12 million that
21   he's already ordered to pay.  So we're up to 22 million.
22           MR. MARINO:  Right.
23           THE COURT:  How many millions are around do you think?
24           MR. MARINO:  I think he has more money.
25           THE COURT:  More than 22 million?

1               MR. MARINO:  I think he has in that neighborhood.  I
2    think he's got 20 million.
3               THE COURT:  If that's all he's got, it's spent on the
4    forfeiture.
5               MR. MARINO:  Right.  Let me answer your Honor's
6    question.  The reason I've done it this way is in the event --
7    unlikely, I will grant you -- that he were to prevail in the
8    Second Circuit on appeal, I would still have these claims
9    alive.  That's the long and the short of it.
10              THE COURT:  For that we should spend another year or
11   two here?
12              MR. MARINO:  No, we don't have to spend any time here.
13   Here's what I propose doing.
14              THE COURT:  I know what you propose.  You propose a
15   54(b).
16              MR. MARINO:  Yes.
17              THE COURT:  Too much trouble.
18              MR. MARINO:  Dismissal as to plaintiffs.  They're
19   dismissed.  They're all out.  Now we got to find them.  Wasn't
20   that easy, your Honor?
21              THE COURT:  It was.  It was the right thing to do.
22   This is your best claim, cleanest claim, get your judgment and
23   go away.
24              MR. MARINO:  Your Honor, I'm 100 percent with you.
25              THE COURT:  Oh, I'm sorry you had to wait a whole hour

1    to tell me.  That's the best news I heard all day.
2              MR. MARINO:  It was scintillating.
3              THE COURT:  It was.  In any event, that's what we'll
4    do.  There's nothing left for you to object to on that, Mr --
5              MR. EPSTEIN:  I'm racking my brain, your Honor, but
6    you appear to be correct.
7              MR. MARINO:  So, your Honor will enter a final
8    judgment --
9              THE COURT:  No.  You will write some order or letter
10   of dismissal of the remainder, then I'll enter a final
11   judgment.
12             MR. MARINO:  All right.
13             THE COURT:  I can close the remaining claims, then in
14   one order say following claims are dismissed and the final
15   judgment is entered on the one claim for X dollars.  In fact,
16   why don't you submit a proposed order.
17             MR. MARINO:  I'll do it.
18             THE COURT:  Two different documents; one voluntarily
19   dismissing the remaining claims; and, two, proposed order of
20   final judgment.  Send it to your adversary.  Once we get the
21   language hammered out, it's done.
22             MR. MARINO:  I don't want any slips between lips and
23   cup.  There is not going to be any language to hammer out.
24   It's going to be as straight forward as it possibly could be.
25             THE COURT:  Just send it to your adversary.

|  |  |
|---|---|
| 1 | MR. MARINO:  We'll do it. |
| 2 | THE COURT:  Then come to me and I'll sign fast, and |
| 3 | off you go. |
| 4 | MR. MARINO:  Thank you, your Honor. |
| 5 | THE COURT:  If you're really indeed -- they may just |
| 6 | take the judgment and say stand in line. |
| 7 | MR. MARINO:  Thanks.  I just have one issue, your |
| 8 | Honor. |
| 9 | THE COURT:  Yes. |
| 10 | MR. MARINO:  I don't want there to be -- I'm trying to |
| 11 | think along with your Honor and not having -- |
| 12 | THE COURT:  Sure. |
| 13 | MR. MARINO:  -- unnecessary proceedings. |
| 14 | THE COURT:  Sure. |
| 15 | MR. MARINO:  I want there -- I want it to be clear |
| 16 | that there is not going to be a stay pending appeal without a |
| 17 | bond. |
| 18 | THE COURT:  Oh, no.  There is no room for a stay here |
| 19 | pending appeal. |
| 20 | MR. MARINO:  So as long as we know that, we'll get the |
| 21 | order and we'll get the letter withdrawing -- |
| 22 | THE COURT:  No.  In the meantime anyway, you just |
| 23 | don't know about this guy and his assets and hunt them down and |
| 24 | everything, that's not my business. |
| 25 | MR. MARINO:  My guess is that because your Honor is |

1    not staying it --
2              THE COURT:  Right.
3              MR. MARINO:  -- his choices are going to be as
4    follows:  Post a bond for the full 31 million, minus the
5    portion of it that we've already been paid, about six million
6    of his compensation.  So post a bond for 25 million --
7              THE COURT:  Yes.
8              MR. MARINO:  -- right, or we will immediately begin to
9    execute on what he has.
10             THE COURT:  But don't you stand in line behind DOJ?
11             MR. MARINO:  I'm not in line behind anyone.
12             THE COURT:  How could that be?
13             MR. MARINO:  Paid it all.
14             THE COURT:  He's paid the DOJ?
15             MR. MARINO:  He's paid it all, including paying us the
16   ten two.  We gave him $30 million over three years.
17             THE COURT:  I thought you said six -- wait a minute.
18             MR. MARINO:  No, we gave him $30 million.
19             THE COURT:  You said two different things.  You said
20   we have 6-million, now you say 10 million?
21             MR. MARINO:  Yes, $6 million was compensation, 4
22   million was legal fees.
23             THE COURT:  So you got ten --
24             MR. MARINO:  We got ten.
25             THE COURT:  DOJ got five.

E1hzmorc                      Conference

1              MR. MARINO:  And everybody else --

2              MR. EPSTEIN:  MCC got several --

3              THE COURT:  Nobody's ahead of you.

4              MR. MARINO:  Nobody's ahead.  We're next in line.  And since he still has a $7 million home in Greenwich and some exotic automobiles and lots of other stuff that he paid -- bought with his money, I think we're probably going to work it out.

9              THE COURT:  We'll see.

10             MR. MARINO:  Thank you, your Honor.

11             THE COURT:  Thank you.

12             (Adjourned)